## UNITED STATES of America, Appellee,

v.

## Christopher Everett KING, Defendant-Appellant.

### No. 71-1174.

United States Court of Appeals,
First Circuit.

Heard Dec. 6, 1971.

Decided Jan. 4, 1972.

Seymour Nathanson, Portland, Me., by appointment of the Court, for appellant.

Peter Mills, U. S. Atty., for the appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Appellant Christopher King and a codefendant, Ronald Matt,[1] were convicted on the first count of a two count indictment charging them with violation of the federal bank robbery statute (18 U.S.C. § 2113(a) and 18 U.S.C. § 2(a)).[2] The convictions arose out of the robbery on November 9, 1970, of the Kittery Branch of the Casco Bank and Trust Company, a Maine banking institution whose deposits were insured by the Federal Deposit Insurance Corporation.

Appellant's first contention on appeal is that the trial court erred in refusing to grant his motion for a severance of trial from the defendant Matt. All of the government's witnesses who were in the bank during the robbery testified that the robbery was committed by two blacks, and the record discloses that both the appellant and his codefendant are in fact black. Matt was specifically identified by several of the witnesses to the crime, but only one witness identified the appellant. Appellant argues that he was found guilty by virtue of his joinder with Matt and the fact that they are both black. It is well settled that the matter of severance is within the trial judge's discretion and that only a strong showing of prejudice will warrant a finding of abuse thereof. Gorin v. United States, 313 F.2d 641, 645 (1st Cir.), cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963). Had the appellant been tried alone, the inference of his guilt from the racial identification of the robbers might well have been as strong as it was in the joint trial. Nor was his joinder with one who was more positively identified as one of the robbers sufficient un-

---

1. A third defendant was also indicted but was not tried with King and Matt. He subsequently was acquitted.

2. The second count charged that said defendants in committing the bank robbery, assaulted and put in jeopardy the lives of employees and customers of the bank by the use of a dangerous weapon, to wit, a hand gun, in violation of 18 U.S.C. § 2113 (d). Both defendants were acquitted by the jury on the Count two charge.

der the circumstances of this case to require severance. In fact, the relative certainty of Matt's identification might have aided rather than prejudiced appellant's case. And there is obviously no merit in the argument that the joinder of two black men is *per se* prejudicial.

We turn now to appellant's claim that the evidence presented to the jury was insufficient to convict him. This contention revolves principally around the identification of the appellant as one of the two blacks who committed the robbery. Two bank tellers and two customers of the bank testified to the events connected with the robbery. Mrs. Nancy Hutchins, a drive-in teller, stated that about 1:30 p.m. on the afternoon in question she noticed two young men come up to the window next to hers and stand there. She said they appeared to be writing something. Then they left and went out the front door of the bank. After five minutes later they came in again and one of them pulled a gun out of his pocket and said this is a holdup. The other robber approached her window, handed her a brown paper bag and told her to put the money in it. She complied with this demand, whereupon they left the bank. Mrs. Hutchins also stated that she could describe both men,[3] that the man holding the gun walked around the bank and stood in front of her window about six feet away for about a minute, and that the entire incident took about five minutes.

During the trial the witnesses were sequestered, and with the approval of the court, both defendants were allowed to sit with the spectators in the back of the courtroom. The record indicates that there were a sizeable number of black spectators who were sitting in several rows. When Mrs. Hutchins was asked to identify the man who gave her the brown paper bag she pointed out someone other than Matt. But when asked by the prosecutor to take a look around the courtroom and see if she could identify the person that she believed was the one who held the gun, Mrs. Hutchins selected the appellant.[4]

The other bank teller (King) identified the defendant Matt and recognized him as one she had gone to school with and had also seen when she worked in a grocery store. She was not asked, however, to identify the appellant. One of the customers in the bank (Cragin) identified a person other than the appellant as the one who carried the gun.

3. In describing the one who had the gun, Mrs. Hutchins stated that he was taller than the one who handed her the brown paper bag (Matt was six feet tall and in his teens or early twenties), about the same age, same build and he too was black. She said that he was wearing a dark blue ski cap pulled down to his eyebrows and a tan or dark green jacket. He had dark sun glasses with large lenses, dark gloves, and was wearing a beard. This description corresponded with the characteristics noted by the other witnesses who saw the appellant.

4. "THE COURT: Now, this question calls for a yes or no answer, I believe, Miss Hutchins. In other words, can you identify someone back there as the person who held the gun on that day or can you not?
THE WITNESS: Yes, I can.
BY MR. WLODKOWSKI:
Q. Would you then identify that person? Take your time.

A. In the fourth row on the left-hand side, the first one.
THE COURT: I'm sorry, where again?
THE WITNESS: The fourth row, on the left-hand side.
THE COURT: And which one?
THE WITNESS: The first.
THE COURT: The first one, which way, the first one from this side or—
THE WITNESS: From the right, in a white shirt.
BY MR. WLODKOWSKI:
Q. Would that person stand up?
(The spectator stood).
Q. Is this the individual that had the gun in his hand?
A. Yes.
MR. WLODKOWSKI: May the record show that the witness has identified Mr. King as the person who held a gun in this bank robbery, alleged bank robbery, on November 9, 1970?"

The second bank customer (Mrs. Mac-Issac) identified Matt, stating that she recognized him as one who had gone to school with her children, had worked at a local store, and had been in her home at one time with other students. She stated that she could not identify the fellow with the gun because he had his back towards her and she did not see his face.

 Appellant contends that since only one witness (Mrs. Hutchins) identified him as a participant in the robbery, the evidence was insufficient to convict him, especially since this witness misidentified his codefendant, who was standing closer to her than the appellant. Also, in this connection appellant's attorney makes some point of her testimony on cross-examination that in an interview with him a short time prior to trial, Mrs. Hutchins stated that she would have difficulty in identifying people of the black race because "they looked alike." This statement is not necessarily inconsistent with the witness's ability to identify the appellant, although it might tend to impeach the identification. The important fact is that Mrs. Hutchins, who had an excellent opportunity to observe the appellant, positively identified him as the one carrying the gun. Appellant's attorney had ample opportunity to cross-examine her, but was unable to shake her testimony. The credibility of that testimony was properly left to the jury, which evidently found it credible. Upon the record in this case we certainly cannot say that there was not sufficient evidence for the jury to conclude beyond a reasonable doubt that the appellant was one of the two men who robbed the bank on the date in question.

 Finally, appellant calls attention to the fact that the statute under which he was convicted makes force, violence or intimidation a necessary element of the crime charged and that there is no evidence that any force, violence or intimidation was used in the instant case. In this connection we merely need mention the statement which one witness at-

tributed to the appellant as he entered the bank holding a hand gun, "Everybody freeze and nobody will get hurt. This is a bank robbery."

Affirmed.