488 A.2d 962

**Bentley DIXON**

v.

**STATE of Maryland.**

**No. 51, Sept. Term, 1984.**

Court of Appeals of Maryland.

March 7, 1985.

Julia Doyle Bernhardt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Bernard A. Penner, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

W. ALBERT MENCHINE, Judge.

In a non-jury trial in the Circuit Court for Baltimore City, Bentley Dixon was convicted of assault with intent to rob and sentenced to three years imprisonment. Upon appeal to the Court of Special Appeals, that Court by *per curiam* opinion filed on October 21, 1983, reversed the judgment of the Circuit Court. On November 21, 1983,[1] however, the State filed a motion for reconsideration that was granted on December 7, 1983, and the *per curiam* opinion was recalled. On January 6, 1984, the Court of Special Appeals affirmed the judgment below in an unreported opinion.[2] We granted certiorari to consider the cause.

■ The sole contention made by the defendant is that the evidence did not establish all elements of the offense charged. In such circumstances, we review the case upon the law and the evidence, but the judgment of the Circuit Court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses. Maryland Rule 886.

■ In *State v. Rusk*, 289 Md. 230, 245, 424 A.2d 720, 728 (1981), we declared that in appeals in criminal cases, the constitutional standard for such review was "whether after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt." Otherwise stated, the findings of fact of the trial judge

---

**1.** November 21, 1983 was the thirty-first day after the filing of the *per curiam* opinion. The thirtieth day, November 20, 1983, however, was a Sunday. The State's motion thus was timely. Maryland Rule 1–203.

**2.** The three-judge panel was divided on the decision.

must be accepted unless there was no legally sufficient evidence or proper inferences cherefrom, from which the court could find the accused guilty beyond a reasonable doubt. *Tucker v. State,* 244 Md. 488, 501, 224 A.2d 111, 119 (1966), *cert. denied,* 386 U.S. 1024, 87 S.Ct. 1381, 18 L.Ed.2d 463 (1967); *McCray v. State,* 236 Md. 9, 15, 202 A.2d 320, 323 (1964).

The essential elements of assault with intent to rob are these:

1. An assault on the victim,
2. By the accused,
3. With the intent to rob.

*Bryant v. State,* 4 Md.App. 572, 578, 244 A.2d 446 (1967), *cert. denied,* 252 Md. 730 (1969).

### The Evidence

At 9:00 p.m. on June 6, 1982, the 24-year old female cashier of the self-service Citgo Filling Station in the 1700 block Russell Street[3] in Baltimore City was inside her booth. The booth was constructed with three glass walls[4] and a solid rear wall through which entry to the booth was provided by a door not open to the public. She sat behind a counter with a drawer that she could open for receipt of customer items. It was dark although the station itself was well lighted. She was alone in the station during the episode. While so located, the cashier observed a man coming up to the window. She asked if she could help him.

The following quotations from her testimony will serve to describe her version of the subsequent events:

"... I sat there and asked him could I help him. And he stated that—he didn't say nothing. And then I asked him again, may I help you. And by seeing his face, I also

---

3. The locale of the station was thus described: "... When you are coming in ... from the Baltimore Washington Parkway, that is the first gas station on the right as you enter the City."

4. The glass walls were not bullet proof.

seen a paper underneath of his arm, and I thought something was going on.

\* \* \* \* \* \*

Q. You say he had a newspaper?

A. Yes, sir, folded underneath his arm, with his hand underneath of it.

Q. Take this newspaper and just show Judge Karwacki how he had the newspaper folded, if you would, please. Stand up so the Court can see you.

(Whereupon, the witness doing same.)

A. Like this, under his arm (indicating).

Q. Okay.

The Court: Was it his right arm? Do you remember?

A. Yes, sir.

\* \* \* \* \* \*

A. He approached the window where I was working.

Q. Go ahead.

A. And I noticed the newspaper. And I noticed his face, and I thought something was going on because he wouldn't say nothing. So, I opened the drawer and he put a note into the drawer. And the note said, 'I want all your money and hurry.'

Q. You picked the note up and read it?

A. I picked the note up and read it.

Q. After you had seen the newspaper and read the note, what did you think?

A. The guy was going to rob me.

\* \* \* \* \* \*

Q. All right. Now, did you notice anything unusual about his face?

A. Yes. I notice this cold, hard look he had in his eyes.

Q. What happened? What did you do after you read the note?

A. I pushed the alarm, which is an arm's distance from underneath the cash register. And it was on the floor beside the safe, underneath the counter.

\*     \*     \*     \*     \*     \*

Q. What happened then?

A. Well, I went on the floor and I waited there for the police to come. And when I looked around to the side of the safe, I seen the guy running off to the side toward north on Haines Street.

Q. You say the guy, who do you mean?

A. The gentleman sitting at the table over there.

\*     \*     \*     \*     \*     \*

Q. Did the police come?

A. Yes, after I had to get up and call them.

Q. You called the police because the alarm didn't work?

A. The alarm didn't work.

\*     \*     \*     \*     \*     \*

Q. And I have in my hand a copy of the Daily Record, December 10th, '82, which is folded in half or actually quartered.

Now, you could see the man's hand; is that correct?

A. Right.

Q. And you could see that in that hand, in the right hand, that he held no weapon of any kind?

A. I thought it was a weapon.

Q. What, the newspaper?

A. Inside of the newspaper.

Q. But you said it was folded in this fashion and held—

A. As if something was inside of it, yes, sir.

Q. Something was on the other side?

A. Inside of it.

Q. Did you ever see any weapon whatsoever?

A. Not visible to my eyes.

Q. Did the man ever make any move with this paper as if he had a weapon?

A. He kept it still, pointed right towards me."

Dixon denied that he had been in the filling station on the evening in question.

On this conflicting evidence the trial judge declared that "I am convinced beyond a reasonable doubt that the Defendant was the person who approached Miss Cole on June 10, 1982, at the service station where she worked. ... I am also convinced beyond a reasonable doubt, for the reasons I have articulated in denying the Motion for Judgment of Acquittal at the close of the State's case,[5] that the defendant did at that time make an assault upon Miss Cole and

---

**5.** At that point in the proceedings below the trial judge had said: "I have no problem finding that there is legal sufficient evidence of an intent to rob and that there is legally sufficient evidence that the Defendant was the actor in this alleged crime. The problem I'm having is the one I think we're all having, and that is whether there is an assault here. That is, of course, the essential element of assault with intent to rob, which is what the State charges, and that is pointed out in Bryant versus State, 4 Maryland Appeals, 572.

"Taking the definition which we use daily in these courts of assault, a threat by words or acts to do bodily harm to another, coupled with an apparent present ability to carry out that threat, I think that when we take all inferences most favorably to the State—and, of course, we must at this juncture—that there was a threat, a threat, the evidence of which comes from the note, the menacing way the Defendant approached the alleged victim, the relative size of the two, the fact that she is a female and he is a male, the fact that he has a piece of paper under his arm, although it was really an unlikely concealing factor for a gun, the fact that he held it so tightly at his side the whole time he approached the enclosure in which she was located, I think gave her reasonable grounds to feel apprehensive that something was contained within that newspaper. And I guess the final thing is that if citizens are going to engage in the kinds of conduct which is described on the part of this Defendant, I do not think they should be heard to say later, you know, I didn't intend to frighten her. In a society with which we live today, an attempted robbery of a lonely service station attendant very often ends up with dire consequences to the service station attendant. And I don't think the service station attendant presented with these circumstances is required to be a hero. I think that there was an apparent ability to carry out the threat, in her mind, which is all substantive, and has to be if the social purpose of protecting our citizens by vehicle of the criminal laws is to be carried out. So, I am going to deny the Motion for Judgment of Acquittal."

that when he made that assault, he had performed [sic] an intent to rob her."

We have said time and time again that the question under Maryland Rule 886 "is not whether we *might* have reached a different conclusion from that of the trial court, but whether the trial court had before it sufficient evidence upon which it could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged...." *Cooper v. State,* 220 Md. 183, 192, 152 A.2d 120, 124 (1959) (emphasis in original). *See also Bird v. State,* 231 Md. 432, 436, 190 A.2d 804, 806 (1963).

### *Elements of the Offense*

We shall discuss the elements of the offense in the reverse order of that previously stated.

### *(a) Intent to Rob*

In *Davis v. State,* 204 Md. 44, 51, 102 A.2d 816, 819 (1954), (a prosecution for assault with intent to murder) we said, "Since intent is subjective and, without the cooperation of the accused, cannot be directly and objectively proven, its presence must be shown by established facts which permit a proper inference of its existence."

The testimony of the cashier, the attitude of the accused, the demanding note, and the reasonable inferences deducible therefrom were found by the trial court to show an intent to rob. We cannot say that its conclusion was clearly erroneous.

### *(b) Criminal Agency*

Judging the credibility of witnesses is one of the functions of the trial court and it may disbelieve exculpatory statements of an accused. *Bird v. State, supra.* The defendant was identified by the cashier. The trial court rejected the testimony of the accused and accepted that of the cashier. We cannot say that his decision was clearly erroneous. The evidence was legally sufficient to show the

criminal agency of the accused. *Turner v. State*, 242 Md. 408, 416, 219 A.2d 39, 43 (1966) and cases there cited.

### *(c) Assault*

In the trial court[6] and in this Court,[7] counsel for the accused has argued that the essential elements of assault have not been shown. Assault is a common law offense that has been the subject of many definitions. In his dissertation upon Private Wrongs, Blackstone observed that "injuries, affecting the limbs or bodies of individuals ... may be committed ... [b]y threats and menaces of bodily hurt, through fear of which a man's business is interrupted" and noted that "[an] assault which is an attempt or offer to beat another, without touching him; as if one lifts up his cane, or his fist, in a threatening manner at another; or strikes at him, but misses him.... This also is an inchoate violence amounting considerably higher than bare threats; and therefore, though no actual suffering is proved, yet the party injured may have redress by action of *trespass vi et armis;* wherein he shall recover damages as a compensation for the injury." 3 Blackstone, *Commentaries* *120.

In his subsequent disscussion of Public Wrongs, Blackstone declared:

> "... I have nothing farther to add to what has already been observed [concerning assault] in the preceding book of these commentaries; when we considered them as private wrongs.... But, taken in a public light, as a breach of the king's peace, an affront to his government, and a damage done to his subjects, they are also indict-

---

6. In the course of his motion for judgment of acquittal, counsel said: "... I believe that the State has brought the wrong charge against Mr. Dixon."

7. In his brief in this Court, counsel said: "Although the State's evidence might be deemed sufficient to show an attempted robbery, it did not demonstrate beyond a reasonable doubt an assault with intent to rob." Brief of Appellant, p. 6.

able and punishable with fine and imprisonment; or with other ignominious corporal penalties...." 4 Blackstone, *Commentaries* \*216.

In R. Perkins, *Perkins on Criminal Law* 114 (2nd ed. 1969), assault is thus defined in pertinent part:

"An assault is (1) an attempt to commit a battery or (2) an intentional placing of another in apprehension of receiving an immediate battery."

An early and leading American decision was the case of *Commonwealth v. White*, 110 Mass. 407, 408 (1872), wherein the trial court had instructed the jury:

" 'that an assault is any unlawful physical force partly or fully put in motion, which creates a reasonable apprehension of immediate physical injury....' "

In approving the instruction, the Court on appeal said:

"It is not the secret intent of the assaulting party, nor the undisclosed fact of his ability or inability to commit a battery, that is material; but what his conduct and the attending circumstances denote at the time to the party assaulted. If to him they indicate an attack, he is justified in resorting to defensive action. The same rule applies to the proof necessary to sustain a criminal complaint for an assault. It is the outward demonstration that constitutes the mischief which is punished as a breach of the peace."

*Id.* at 409.

The late Chief Judge Brune, speaking for this Court in *Kellum v. State*, 223 Md. 80, 84–85, 162 A.2d 473, 476 (1960), said:

"We think that the evidence on behalf of the State was sufficient, if believed, to establish the offense charged against the appellant. 'A simple assault under common law is typified by an attempt or offer, with unlawful force or violence, to do a corporal hurt to another.' Clark & Marshall, *Law of Crimes* (6th Ed., Wingersky's Revision), § 10.15, p. 642. The statement in *Yantz v. Warden*, 210 Md. 343, 351, 123 A.2d 601 [ (1956) ], that '[t]he crime of

assault is an attempt by force to injure the person of another' is not inconsistent with the general statement made in Clark & Marshall just quoted. It was a sufficient definition for the purposes of that case, though not perhaps a full and comprehensive definition of the term, which has substantially (if not exactly) the same meaning in our law of torts as in our criminal law. We are not aware of any possible difference which might affect the result here. See 4 Am.Jur., *Assault and Battery*, §§ 2, 5, 6, pp. 124–125, 127–130. Cf. *Handy v. Johnson*, 5 Md. 450; *Hayes v. State*, 211 Md. 111, 115, 126 A.2d 576; Restatement, 1 *Torts*, §§ 21, 33. See also IV Blackstone, *Commentaries* (Oxford, 1769), pp. 216–17, as to the likeness of assault and battery as private and public wrongs."

This Court in *Kellum, supra,* found it unnecessary to engage in "[a]ny extended discussion of what constitutes an assault without any physical contact." 223 Md. at 85, 162 A.2d 473. In *Hayes v. State,* 211 Md. 111, 115, 126 A.2d 576, 578 (1956), however, we had said:

"While there is some conflict in the authorities as to whether, in the case of an assault, there must be an actual present ability to commit a battery, the better view seems to be that an apparent ability is enough. See *Restatement, Torts,* § 33 and *Prosser, Torts,* p. 52. Since the right protected is that of the person attacked, the secret intention of the wrongdoer not to perform the threatened act, or even his undisclosed inability to perform it, is not a legal excuse in a civil action. The criminal law is also designed to protect rights of the general public and the individual assailed, not merely to fix the moral guilt of the assailant. See *Sayre, Criminal Attempts,* 41 Harv.L.Rev. 821, 849.

In *Lyles v. State,* 10 Md.App. 265, 267, 269 A.2d 178, 179 (1970), Judge Orth, there speaking for the Court of Special Appeals, said:

"We said in *Williams v. State,* 4 Md.App. 643, 647 [244 A.2d 619 (1968) ] that any attempt to apply the least force

to the person of another constitutes an assault. The attempt is made whenever there is any action or conduct reasonably tending to create the apprehension in another that the person engaged therein is about to apply such force to him. It is sufficient that there is an apparent intention to inflict a battery and an apparent ability to carry out such intention."

We believe that the definition in *Lyles v. State, supra,* is a correct compendium of the authorities previously quoted and is the test properly to be applied in cases such as this where intimidation or putting in fear is the gravamen of the action.

We consider cases decided in the Federal courts under 18 U.S.C. § 2113(a) to be pertinent to our present inquiry. Section 2113(a) reads as follows:

"§ 2113. Bank robbery and incidental crimes

(a) Whoever, by force and violence, or *by intimidation,* takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association ... [s]hall be fined not more than $5,000 or imprisoned not more than twenty years, or both." (Emphasis added.)

The gravamen of the action there, as here, is whether intimidation has been shown.

In *United States v. Alsop,* 479 F.2d 65, 67 n. 4 (9th Cir.1973), the Court, although approving the charge given in the court below, suggested this modification of the definition of intimidation for future use in the lower courts:

"4. The determination of whether there has been an intimidation should be guided by an objective test focusing on the accused's actions. That test requires the application of the standard of the ordinary man. Therefore, to obviate any future alleged difficulty, we suggest the definition of intimidation should be modified. It could read, for example: To

take, or attempt to take, 'by intimidation' means wilfully to take, or attempt to take, in such a way that would put an ordinary, reasonable person in fear of bodily harm. *See United States v. Roustio,* 455 F.2d 366, 371–72 (7th Cir.1972); *United States v. Thomas,* 455 F.2d 320, 322 (6th Cir.1972); *United States v. DePalma,* 414 F.2d 394, 396 (9th Cir.1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 697, 24 L.Ed.2d 690 (1970)."

*See also United States v. Hopkins,* 703 F.2d 1102 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 399, 78 L.Ed.2d 341 (1983).

In *United States v. Baker,* 129 F.Supp. 684, 686 (S.D.Cal. 1955), the court declared that "[W]hat is involved in this indictment [under § 2113(a)] is an *attempted taking* by intimidation, the means being intimidation, or putting in fear instead of by force." (Emphasis in original.) In that case the defendant had passed a note to the teller which read, "Please check all, into this sack, Thank you ECB". *Id.* at 687. The teller asked, "What is this?" Defendant then said, "Just put everything you have in the sack and there won't be any trouble." *Id.* at 687. No weapon was displayed. The Court said at 687:

"The handing of similar notes to bank tellers is a familar *modus operandi* of both armed and unarmed bank robberies. * * *. The fact that this teller called for help instead of handing over money, keeps this case an attempt. *The method used has often induced a bank teller to part with cash, for the circumstances do not admit of an examination to determine whether the man at the window is armed or not. The very presence of a man, having a note, who assures the teller, 'Do as I say, and there won't be any trouble', infers that failure to do as ordered is an invitation to trouble.* Defendant intended to get money from the teller by intimidation. * * That she did not respond as defendant expected, saves defendant from having committed the robbery he planned, but does not wipe out his overt acts wilfully

done as an endeavor to do or perform and, hence, an attempt to commit, a bank robbery." (Emphasis added.)

The above language of *Baker, supra,* was quoted with approval in *United States v. Brown,* 412 F.2d 381 (8th Cir.1969), wherein conviction under § 2113(a) was affirmed under similar facts—a note demanding money without display of a weapon. The Court said at 382:

"The overt act of demanding money accompanied by a threatening gesture of any type intended to intimidate could reasonably be viewed as either evidence of the attempted robbery itself, or as evidence of the perpetrator's intent to commit a felony. The party accousted or threatened does not have to be put in fear of his life, only intimidation need be shown along with a demand for funds to satisfy the first paragraph of § 2113(a) ...." [8]

In *United States v. Jacquillon,* 469 F.2d 380 (5th Cir. 1972), *cert. denied,* 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973), the appellant contended that intimidation was not shown because the teller did not see a weapon. Rejecting the contention, the Court said at 385:

"As used in section 2113(a), intimidation means to make fearful or to put into fear. *United States v. Baker,* 1955, S.D.Cal.C.D., 129 F.Supp. 684. Proof of actual fear is not required in order to establish intimidation. Rather, it may be inferred from conduct, words, or circumstances reasonably calculated to produce fear. In the instant case, the robber presented the teller with a note, which stated 'I have a gun. Give me all big bills or I will shoot you.' This tactic is frequently employed by armed robbers and is clearly intended to induce fear. See, e.g., *United States v. Epps,* 4 Cir. 1971, 438 F.2d 1192. The teller's testimony at trial shows that she was afraid.

---

**8.** This Court has declared the same rule of law to be applicable to the crime of assault. In *Hayes v. State, supra,* we said at 211 Md. 116, 126 A.2d 576:

"Nor need it be shown that the person assailed was actually put in fear, if the means employed are calculated to instill fear in the heart or mind of a reasonable man."

Certainly, it cannot be said that the jury exceeded the scope of its discretion in finding intimidation."

In *United States v. Harris*, 530 F.2d 576, 579 (4th Cir. 1976), the defendant handed a note to a teller which read: "This is a holdup" and placed his hand in such a manner that she assumed he had a weapon. The Court said at 579:

"Although no weapon was shown and no verbal threat was made, the jury could properly conclude from this evidence that the defendant's conduct was reasonably calculated to produce fear."

In *United States v. Robinson*, 527 F.2d 1170 (6th Cir. 1975), the Court, sustaining conviction under § 2113(a), *supra*, said at 1172:

"[W]e hold that a jury would be justified in finding intimidation where a man clothed in a 'leather coat' (so that a weapon could presumably be concealed) after waiting somewhat nervously in line, attempts, at best, a sham commercial transaction, see *Baker, supra*, and commands with the imperative 'give' a teller to turn over '*all* [her] money.' Especially in an era characterized by a dramatic increase in crime generally and of bank robbery in particular, and by increased violence, see, e.g., FBI, *Crime in the United States* 1974 at 10–11, 26 (1975), such circumstances could well 'produce in the ordinary person fear of bodily harm,' *Alsop, supra*, 479 F.2d at 67. An 'ordinary person' in the teller's position could reasonably, we think, infer an implicit threat in the demand, 'Give me all your money,' accompanied by the presentation of a 'black pouch.' That appellant was less verbal than the robbers in *Jacquillon; King; Epps; Brown; Baker* or *Roustio*, in these circumstances, we think, is immaterial." [9]

---

**9.** References to the cited cases are:
*United States v. Jacquillon*, 469 F.2d 380, *supra*, (the accused had stated that he had a gun but the teller had not seen one); *United States v. King*, 453 F.2d 9 (1st Cir.1972) (gun displayed); *United States v. Epps*, 438 F.2d 1192 (4th Cir.1971) (note contained implicit threat); *United States v. Brown*, 412 F.2d 381, *supra*, (note contained direct threat but without display of weapon); *United States v. Baker*, 129

In *United States v. Slater,* 692 F.2d 107 (10th Cir.1982), the defendant unhesitatingly entered the area occupied by tellers and seized money from their cash drawers. Affirming conviction under § 2113(a), the Court said at 109:

"A jury could conclude on these facts that the person intended and relied upon the surprise and fear of the bank personnel in order to carry out the crime with the cool deliberation that this method showed. Also, a jury could find that an expectation of injury was reasonable in the context of an incident of this kind where a weapon and a willingness to use it are not uncommon."

*See also United States v. Amos,* 566 F.2d 899 (4th Cir.1977) (hand in pocket and demand for money proved intimidation).

■ In sum, the cited cases make crystal clear that possession of an undisclosed weapon may be inferred from the surrounding facts and circumstances.

This Court in *Bland v. State,* 236 Md. 652, 653, 205 A.2d 237, 237 (1964), *cert. denied,* 381 U.S. 946, 85 S.Ct. 1791, 14 L.Ed.2d 710 (1965), an appeal from conviction and sentence for assault with intent to rob, sustained the propriety of drawing such an inference from the defendant's statement "this is a stick-up" coupled with testimony that his right hand was in his pocket.

Defendant points out that the trial judge found a newspaper to be an unlikely place of concealment. He ignores, however, the words of the judge immediately following that phrase, namely, "the fact that he held it so tightly at his side the whole time he approached the enclosure in which she was located, I think gave her reasonable grounds to feel apprehensive that something was contained within that newspaper." In *United States v. Cobb,* 558 F.2d 486 (8th Cir.1977), a newspaper was in fact used for just such concealment of a weapon.

---

F.Supp. 684, *supra,* (note contained implicit threat); *United States v. Roustio,* 455 F.2d 366 (7th Cir.1972) (gun observed by teller).

■ In the subject case, the defendant with a "cold, hard look" in his eyes approached the cashier with a previously written demand for all her money, in the night, at a time when she was alone in the filling station and carrying a newspaper tightly under his arm, folded in such a way that the cashier "thought it was a weapon inside the newspaper, that he kept still, pointed right towards [her]." She dropped to the floor of her booth and pressed the alarm button and the defendant fled.

Under these facts and circumstances, the trial judge found that all elements of the crime charged—assault with intent to rob—had been established beyond a reasonable doubt. We cannot say that his decision was clearly erroneous.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY PETITIONER.

ELDRIDGE, Judge, dissenting.

The State in this case produced evidence that Bentley Dixon, carrying a folded newspaper and displaying what Diane Cole characterized as a "cold, hard look" in his eyes, handed a note to Cole requesting money in a "hurry." The State produced *no* evidence of any action or conduct on Dixon's part "reasonably tending to create the apprehension in another that [Dixon was] about to apply force" to Cole, which, as the majority notes, must be proved to convict Dixon of assault in Maryland. When the State fails to produce any evidence of one of the elements of an offense, a conviction on that charge cannot stand.

The construction some federal courts have given 18 U.S.C. § 2113(a) does lend a degree of support to the majority's view that the State produced evidence to support a conviction for assault. Nevertheless, I see no reason to apply cases interpreting a federal statute to distort the Maryland law governing assault in order to save the State from the consequences of having charged the wrong crime. Under the law of Maryland, Dixon might properly have

been convicted of attempted larceny. He should not have been convicted of assault with intent to rob. Therefore, I respectfully dissent.

Judge COLE has authorized me to state that he concurs with the views expressed herein.