**HEADNOTE:**

*Todd Michael Scriber v. State of Maryland*, No. 2699, September Term, 2016

SEXUAL ABUSE OF A MINOR; SUFFICIENCY OF THE EVIDENCE; EXPLOITATION

Md. Code (2012 Repl. Vol) § 3-602(b)(1) of the Criminal Law Article ("CR") provides, in pertinent part: "A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not cause sexual abuse to the minor." Sexual abuse is defined as "an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not." *Id.* at (a)(4)(i).

In the context of this case, where appellant was a teacher taking multiple photos of a student during school, and the content of the photos, depicting primarily the buttocks of a student bending over what appears to be a table, taken with evidence of photos appellant took depicting only a "young woman's legs and buttocks," a rational trier of fact could conclude that appellant's actions in taking these photos were for his own benefit and constituted exploitation of a sexual nature.

Appellant's action, in placing his phone underneath his student's skirt and taking a picture, was sufficient for a rational trier of fact to find that appellant engaged in an act that involved sexual exploitation at the time he had responsibility for the student's supervision.

Circuit Court for Montgomery County
Case No. 129825

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2699

September Term, 2016

_____

TODD MICHAEL SCRIBER

v.

STATE OF MARYLAND

_____

Graeff,
Nazarian,
Fader,

JJ.

_____

Opinion by Graeff, J.

_____

Filed:  March 29, 2018

Following a bench trial, Todd Michael Scriber, appellant, was convicted of two counts of sexual abuse of a minor in violation of Md. Code (2012 Repl. Vol) § 3-602(b)(1) of the Criminal Law Article ("CR"). The circuit court imposed concurrent sentences of 25 years' imprisonment, all but 18 months suspended, followed by five years of supervised probation.

On appeal, appellant presents one question for this Court's review, which we have rephrased slightly, as follows:

> Was the evidence sufficient to support appellant's convictions of sexual abuse of a minor?

For the reasons set forth below, we shall affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 2, 2015, appellant, a science teacher at a Montgomery County high school, administered a makeup exam to N.S., one of his students.[1] As part of the accommodations for her learning disability, N.S. took a written examination and then had the questions administered orally.

After completing the written examination, N.S. went to the front of the classroom, where appellant was seated in a roller chair, to go over the exam orally. N.S. was wearing a skirt, and she stood approximately 18 inches from appellant.

Initially, appellant was facing his computer and using his iPhone as he conducted the examination orally. Toward the end of the exam, however, appellant turned to face

---

[1] We will refer to the minor-victims by their initials to protect their privacy. In addition to N.S., charges were filed with respect to R.K., M.S., and G.E.

N.S. and "leaned forward like on his knees," with his phone in his hand. The phone was facing downward with the screen toward the floor and the camera facing upward.

N.S. testified that, after leaning forward, appellant put the phone "almost underneath [N.S.'] skirt" and "started clicking the volume button[,] which takes pictures" when the phone is positioned in the manner described. N.S. believed appellant was taking pictures by "clicking the volume button" because she had taken pictures in that same manner herself.[2]

At that point, N.S. stepped back and crossed her legs while she finished the oral review of the examination. After completing the examination, N.S. left appellant's classroom and met two of her friends, who were waiting outside of the classroom. N.S. told these two friends about the pictures appellant was taking during the examination. N.S. also told her father and mother.

N.S.' parents called the school and scheduled a meeting with the principal for the following Monday.[3] N.S. also filed a complaint with Child Protective Services ("CPS") for Montgomery County, which was forwarded to the Montgomery County Police Department.

---

[2] The evidence showed that appellant's phone did possess the shutter capability, which allows a user to "use the volume up and down toggles while the camera is on to take photographs."

[3] The incident occurred on a Friday.

On October 5, 2015, Michelle Sears, a CPS worker, and Detective Wendy Giovacchini, a detective with the sexual assault unit of the Montgomery County Police Department, interviewed N.S. The next day, Detective Giovacchini, along with Corporal Julia Gilroy, went to the high school to speak with appellant.

Detective Giovacchini advised appellant that N.S. thought appellant had taken pictures on his phone while she was taking the examination. Detective Giovacchini asked to look at appellant's phone. Appellant stated that the phone was in his vehicle. After going to the vehicle and opening his trunk, however, appellant said that his phone actually was at school.

Detective Giovacchini, Corporal Gilroy, and appellant returned to appellant's classroom, where appellant retrieved his phone from the top of his desk and began "looking through items on his phone." Detective Giovacchini asked to see to the phone, which was "opened to the photos." As Detective Giovacchini looked, she noticed that there were pictures of adolescent females in the classroom. Specifically, she observed "pictures of butts [in] what appeared to be the classroom setting." Detective Giovacchini did not see a picture of N.S. or the clothes she described wearing on the date of the incident.

When appellant saw the pictures that Detective Giovacchini found, "he grabbed . . . for the phone." Detective Giovacchini told appellant that she was keeping the phone.

The police subsequently obtained a search warrant for appellant's phone. On October 14, 2015, Detective Robert Onorio, an investigator in the child exploitation unit

and electronic crimes unit of the Montgomery County Police Department, examined the phone. He placed the phone in a Faraday Box to cut off network connection.[4] Detective Onorio then extracted the data stored on the phone and loaded it into physical analyzer software to review the artifacts extracted from the phone. He found photos, as well as "a number of thumbnail images of what appeared to be females in a classroom setting where the focus of the images were the, the buttocks of the young females." He explained that, when a phone captures a picture, the image is saved in a file path, but a thumbnail of that image is "not automatically created." A thumbnail is not created until the user "touch[es] the photograph [in the camera roll] and [makes] it []appear [] full screen. That's when the thumbnail would be captured. Otherwise, you would have a thumbnail for every single photograph." In other words, to capture a thumbnail, user manipulation of the image is required. "[I]f a user has manually deleted the photographs . . . but not actually looked at the photograph, it would not have created the thumbnail image. It would just simply not be there."

A thumbnail is not visible on a phone like a photograph would be visible. If a picture is taken and a thumbnail ultimately created, however, the thumbnail will remain on the phone even after the picture is deleted (though not visible to a user). Although it is possible

---

[4] Detective Onorio explained that, between October 6, 2015, when the phone was seized, and October 14, 2015, when he placed the phone in the Faraday Box, if the phone had been powered on and was not placed in airplane mode, images on the phone could have been remotely deleted.

to delete a thumbnail from a phone, Detective Onorio testified that to do so, it would generally require a factory reset or a special program, but that "[i]t's just not something that [the phone] is designed to readily do."

Appellant was indicted on four counts of sexual abuse of a minor. Count I of the indictment pertained to the conduct relating to N.S.

Count II involved images from appellant's phone, shown in State's Exhibit No. 14, which the parties stipulated were of the minor-victim, R.K., who was appellant's student during the fall of 2015. State's Exhibit No. 14 depicted images of R.K. standing in a classroom with her arms outstretched and cleavage exposed. State's Exhibit No. 12 depicted 24 thumbnails of R.K.

Count III involved images from appellant's phone, shown in State's Exhibit Nos. 8 and 15, which the parties stipulated were of the minor-victim, M.S., who was appellant's student during the fall of 2015. These exhibits depicted images of M.S.' buttocks, taken in the classroom setting as M.S. was bending over.

Count IV involved images from appellant's phone, shown in the State's Exhibit No. 13, which the parties stipulated were of the minor-victim, G.E., who was appellant's student during the fall of 2015. State's Exhibit No. 13 depicted images, taken from behind, of G.E. standing in a classroom.

Multiple images of M.S., R.K., and G.E. were admitted into evidence. Additionally, the court admitted photos of unknown females, which the court found relevant to

appellant's intent. The court described one photo as one where the "whole photo" was depicting "a girl's buttocks." It stated that there was "no legitimate student activity going on," but rather, it was "just a girl bending over."

After all the evidence was presented, the court issued its ruling. The court made the following findings of fact:

> So, I find from the evidence that [N.S.] was present in the [appellant's] classroom on October the 2nd, last year, to take a makeup test. She approached, at some point, the [appellant's] desk so she could review her answers with him as he sat in a swivel chair. She was dressed at the time in a knee-length skirt, and she stood as the [appellant] sat at his desk.

> Towards the end of this oral review of her answers, I find that [appellant] turned to face [N.S.] and moved his chair forward towards her with his elbows resting on what would be his thighs, as demonstrated by [N.S.] when she showed us, and a cellphone in his left hand. I find that she had observed him doing something on the phone in the moments before. And, at that time, he was looking down at the phone.

> As [appellant] leaned forward, and this is something that I don't think was, I heard a lot about after it was said, but she testified, and I find as a fact, that the phone was facing down. In other words, the screen would not be visible to the [appellant] who was facing the floor. At that time, I find that she saw him hit the volume button, and she heard clicking.

> At this point, the phone was almost underneath her skirt, and she saw movement in the phone as his fingers worked the volume button. She believed, and I agree with her, that she had been photographed by the [appellant]. And, so she crossed her legs and leaned back up against a nearby desk ostensibly in an effort to avoid being photographed anymore.

> Soon after that, she concluded her business. She left. She informed her friends and her father of what had occurred.

* * *

The parties have agreed that at least 30 images were taken of the alleged victims in Counts 2, 3, and 4. No images of [N.S.] were recovered. It's unclear as to when the photos in 2, 3, and 4 were taken other than the stipulation that it was during that first I guess you call semester of the year for his particular class.

The circuit court then noted that, although "[t]he case law does tell us that this particular offense is not a specific intent crime," "there's got to be some reason here for these photos to have been taken in order for [the court] to consider whether the [appellant] is guilty of child sexual abuse." In that respect, the circuit court stated that "intent can be shown by surrounding circumstances."

The court then stated:

I have three sets of pictures, as well as the testimony of [N.S.] from which I'm asked to find child sexual abuse here. But, what I really find key to my analysis is the testimony of [N.S.]. I find her testimony to be absolutely credible. I do not have a reasonable doubt that the [appellant] snapped a photo or photos of her while she was standing over him wearing a skirt.

If the [appellant] was doing other things on his cellphone before he finished with [N.S.], he was doing only one thing at the end. He scooted towards her in his chair. She saw him manipulate his fingers. She heard the click. And the phone was almost underneath her skirt.

What happened to that photo, I don't know. I don't want to say I don't care because it would be certainly relevant to prove or disprove what had happened. But, you know, the wonders of modern technology being what they are, I don't find it the least bit unusual that either the camera did not take the photo for whatever reason, I don't know what happens when a flash doesn't go off, if a flash is, indeed, required in order to take a photo in that atmosphere. The camera may have malfunctioned. The image may have been erased. But, I have no doubt that a photo was taken.

* * *

-7-

. . . I can only say that I don't really see any value reason where a high school teacher would be using his cellphone, face down, camera up, while dealing with a student in a dress standing over him.

No satisfactory explanation has been given to me. I can think of none. And it's my job to try to find a reasonable doubt here. . . . I can think of no reason why, given [N.S.'] testimony, which I found absolutely credible, the [appellant] would have been doing anything other than trying to take her picture. So, I find the [appellant] guilty of Count 1.

With respect to Count II, the court considered State's Exhibit Nos. 12 and 14, "an extraction report with thumbnails and the images of several young ladies, five in number, five being the number of images. There [were], depending upon the photo, three to four young ladies." The court noted that the subject of the photos, R.K., was "standing in what look[ed] like . . . the front of the classroom," and "what [was] most notable about her . . . [was] that she [was] displaying cleavage." It was from that display that the court was "asked to find sexual exploitation in the taking of this photo."

The court found appellant not guilty on Count II. With respect to the images of R.K., the court stated:

It's possible that the reason this photo was taken was to memorialize this young lady displaying cleavage. But, it is equally possible, in my view, that this was a depiction of classroom activity. And, again, I'm somewhat in the dark here as to what is permissible and what teachers do nowadays.

* * *

[A]bsent any other testimony, not knowing whether it post-dated or pre-dated [N.S.'] incident, I have reasonable doubt as to what the reason for this photo was.

-8-

There's no young women whose bottoms are prominently displayed, as we'll get to in a second. And, I have a sneaking suspicion that I know why this photo was taken. But, that's not the standard here. The standard is reasonable doubt. And, I have a reasonable doubt as to why this picture was taken. I find the [appellant] not guilty of Count 2.

With respect to Count III, the circuit court stated that it had "no doubt as to why that photo was taken." It continued:

I find no reason or no explanation as to why any teacher during a class day would take nearly 30 images of a young girl bending over, taking the picture from the back to the virtual exclusion of every other part of her body.

This was no mistake. This was not an accident, especially when I view State's [Exhibit] No. 20, which were the three photos that I allowed in from them, let's say the non-victims from want of a better term. And, these photos, which appear to be the same young lady who's wearing an extremely short, extremely short shorts, there's three of these images. And you know, that's all there is in this photo is the young woman's legs and buttocks. That's all.

So, looking at that and looking at these photos, there's no doubt in my mind that these pictures were taken to memorialize this young women's backside. I find the [appellant] guilty of Count III.

The court then found appellant not guilty on Count IV, which involved pictures showing "the back of the victim," G.E. The court stated that the photo was not as "descriptive" as the other photos and "purportedly could be taken to show interaction among students." The court questioned why appellant took "so many photographs of the same young woman," stating: "Maybe it was the anticipation that she was going to bend over. I don't know." But the court said that it could not find "beyond a reasonable doubt that there was no legitimate reason" for the pictures.

As indicated, the court sentenced appellant to 25 years' imprisonment on Counts I and III, to be served concurrently, with all but 18 months suspended on each sentence. This appeal followed.

## DISCUSSION

Appellant's sole contention on appeal is that the evidence was insufficient to support his convictions of two counts of sexual abuse of a minor. CR § 3-602(b)(1) provides, in pertinent part: "A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor may not cause sexual abuse to the minor." Sexual abuse is defined as "an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not." *Id.* at (a)(4)(i). Sexual abuse includes "incest, rape, sexual offense in any degree, sodomy, and unnatural or perverted sexual practices." *Id.* at (a)(4)(ii).

This Court has summarized the elements of the offense of sexual abuse of a minor as follows:

> [T]he three elements that the State must prove are: (1) that the defendant is a parent, family or household member, or had care, custody, or responsibility for the victim's supervision; (2) that the victim was a minor at the time; and (3) that the defendant sexually molested or exploited the victim by means of a specific act.

*Schmitt v. State*, 210 Md. App. 488, 496, *cert. denied*, 432 Md. 470 (2013). There is no dispute that the first two elements were satisfied here; the only element at issue in this appeal is the third one, the element of sexual exploitation.

-10-

In reviewing the circuit court's finding that there was sufficient evidence to convict appellant of two counts of sexual abuse of a minor, we apply well-settled principles of law:

> The standard for appellate review of evidentiary sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. That standard applies to all criminal cases, regardless of whether the conviction rests upon direct evidence, a mixture of direct and circumstantial, or circumstantial evidence alone. Where it is reasonable for a trier of fact to make an inference, we must let them do so, as the question is not whether the [trier of fact] could have made other inferences from the evidence or even refused to draw any inference, but whether the inference [it] did make was supported by the evidence. This is because weighing the credibility of witnesses and resolving conflicts in the evidence are matters entrusted to the sound discretion of the trier of fact. Thus, the limited question before an appellate court is not whether the evidence *should have or probably would have* persuaded the majority of fact finders but only whether it *possibly could have* persuaded *any* rational fact finder.

*Darling v. State*, 232 Md. App. 430, 465, *cert. denied*, 454 Md. 655 (2017) (quotation marks and citations omitted).

Where, as here, a case is tried before the court rather than a jury,

> the judgment of the [c]ircuit [c]ourt will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses. . . . [T]he findings of fact of the trial judge must be accepted unless there was no legally sufficient evidence or proper inferences therefrom, from which the court could find the accused guilty beyond a reasonable doubt.

*Brown v. State*, 234 Md. App. 145, 152 (2017) (quoting *Dixon v. State*, 302 Md. 447, 450–51 (1985)) (internal citations omitted). Accordingly, "[w]hen reviewing bench trials, we review findings of fact under the 'clearly erroneous' standard, meaning that '[a] finding of

-11-

a trial court is not clearly erroneous if there is competent or material evidence in the record to support the court's conclusion.'" *Id.* (quoting *Lemley v. Lemley*, 109 Md. App. 620, 628 (1996)).  Issues of law are reviewed *de novo*.  *Schmitt*, 210 Md. App. at 496.

With that standard of review in mind, we will address first the law regarding exploitation.  We will then address appellant's specific contentions with respect to each conviction.

## I.

## Exploitation

As the Court of Appeals noted in *Walker v. State*, 432 Md. 587, 615 (2013), the term "exploitation" is not defined in CR § 3-602.  Thus, to determine whether appellant's actions constitute "exploitation" pursuant to the statute, the court applies well-settled rules of statutory construction, as follows:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.

> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.

* * *

-12-

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense.

*State v. Bey*, 452 Md. 255, 265–66 (2017) (quoting *State v. Johnson*, 415 Md. 413, 421–22 (2010)).

When interpreting the "breadth of conduct" intended to be covered under § 3-602, the Court of Appeals has stated that the legislature intended the statute to "cover a wide range of conduct." *Crispino v. State*, 417 Md. 31, 43 (2010). Acts amounting to sexual abuse need not otherwise be criminal, *Tribbitt v. State*, 403 Md. 638, 642 (2008), and "it is not required that a defendant touch the victim to be guilty of child sexual abuse." *Walker*, 432 Md. at 619. Rather, "the State need only prove, beyond a reasonable doubt, that the parent or person having temporary or permanent custody of a child took advantage of or unjustly or improperly used the child for his or her *own* benefit." *Brackins v. State*, 84 Md. App. 157, 162 (1990). *Accord Walker*, 432 Md. at 619-20.

The Maryland appellate courts have discussed the "variety of wrongful acts" covered by the statute on several occasions. *Schmitt*, 210 Md. App. at 497. In *Brackins*, 84 Md. App. at 161-62, this Court held that the defendant exploited the victim, a 12-year-old girl under his supervision, by unbuttoning her blouse to take "a semi-nude Polaroid snapshot of her." Although Brackins discarded the photograph shortly thereafter, "he

-13-

exploited the girl when he partially disrobed her for his own pleasure or amusement or gratification or interest." *Id.* at 162.[5]

In *Tribbitt*, 403 Md. at 641-42, a physical education teacher, who grew "close" with a student, engaged in a series of inappropriate acts with her. The victim testified that, among other things, Tribbitt grabbed her "butt," rubbed her vaginal area through her pants, and put his hand beneath her pants, "stopping just above her vagina." *Id.* at 642. The Court of Appeals rejected the argument that the definition of "sexual abuse" was limited to otherwise criminal acts, noting that "[t]he plain language of the statute clearly contemplates that *all* acts of sexual molestation and exploitation fall within the definition of sexual abuse." *Id.* at 649 (emphasis added).

This Court further addressed the type of conduct that constitutes exploitation in *Schmitt*:

> Other conduct prohibited under the heading of exploitation includes French kissing a minor, *see Crispino*, 417 Md. at 46-47, encouraging a minor to masturbate and filming it, *see Raines v. State*, 142 Md. App. 206, 218 (2002), and even in certain circumstances, the 'omission or failure to act to prevent molestation or exploitation when it is reasonably possible' to do so, *see Degren v. State*, 352 Md. 400, 424 (1999).

210 Md. App. at 501.

---

[5] This Court stated: "The Polaroid snapshot was not a necessary element of the exploitation although it was damning evidence of the act of exploitation." *Brackins v. State*, 84 Md. App. 157, 162 (1990).

In *Schmitt*, the issue was whether Schmitt's action in placing a hidden video camera in the bedroom, a private and intimate place, of a minor living in his home, constituted exploitation of the minor. Noting that the memory card found in the camera contained video of the minor dressing, as well as Schmitt masturbating in the victim's bedroom, this Court held that the evidence was "sufficient to show that [Schmitt] took advantage of or unjustly or improperly used [the minor] for his own sexual benefit," and therefore, appellant's action in taping the victim "constituted exploitation of a sexual nature." *Id.* at 502. This Court held that it did not matter that the minor did not know about the recording until after her mother found the camera, stating: "Explicit proof by the State of an adverse impact upon the victim is not an element of the offense of sexual child abuse under § 3–602." *Id.* at 503.

In *Walker*, 432 Md. at 592-93, the defendant, a paraeducator for a school's special education program, sent numerous letters to a special education student. In addressing whether Walker's action constituted sexual exploitation, the Court of Appeals looked at both the content of these letters, which the circuit court found contained "'passionate comments that . . . almost border on obsession'" and "certainly had sexual undertones," and the context, in which a 38-year-old man was writing to an eight-year-old girl. *Id.* at 624. The Court held that the "effect of the letters as a whole" constituted sexual exploitation. *Id.* Although noting that most Maryland cases addressing child sexual abuse had involved physical touching of the victim, the Court stated:

But that does not mean that because a particular fact pattern has not yet occurred the statute is so limited. The General Assembly's concern for the welfare of children, and the myriad ways in which abusers can sexually exploit minors, militates against unduly narrowing the scope of a statute that is reasonably worded so as to reach a wide swath of behaviors, including those where a minor is sexually exploited but not physically harmed.

*Id.* at 623.

In *Wicomico Cty. Dep't of Soc. Servs. v. B.A.*, 449 Md. 122 (2016), the Court of Appeals addressed whether a martial arts instructor engaged in sexual abuse by engaging in sexually suggestive telephone and electronic communications with a student. Although the decision in that case turned on whether the instructor had responsibility for the care of the child, the Court stated that "seemingly innocuous actions may nonetheless be sexually exploitative if . . . they are sexual in context, and the adult performing the actions receives a benefit from them." *Id.* at 139.

With this background in mind, we turn to the facts of this case.

## II.

### Count III

Appellant contends that the circuit court erred in finding that there was sufficient evidence that he "sexually exploited M.S. for his own advantage, profit, or benefit."[6] He argues that "[t]he mere taking of a picture of a fully clothed individual is not sufficient to

---

[6] Both parties begin by addressing the sufficiency of the evidence as it relates to Count III. We will do the same.

-16-

prove the elements of 'sexual exploitation,' without additional evidence that [he] personally benefited from the pictures of M.S."

The State disagrees. It contends that "the court's finding that the photographs of M.S. – along with several other photographs depicting other girls' buttocks to the exclusion of anything else – were enough to conclude that [appellant] took the pictures for his own personal benefit was reasonable and supported by the evidence."

In assessing the sufficiency of evidence to support appellant's conviction for sexual abuse of M.S., appellant's framing of the issue, whether "[t]he mere taking of a picture of a fully clothed individual" is sufficient to prove "sexual exploitation," is too narrow. Rather, our analysis requires consideration of all the circumstances, including the context in which the pictures were taken, i.e., appellant was a high school teacher and the minor-victim, M.S., was his student, and the content of the pictures, which the circuit court accurately described as multiple images of M.S. "bending over, taking the picture from the back to the virtual exclusion of every other part of her body." The circuit court, in assessing the totality of the circumstances, concluded that this "was not an accident," particularly when considered with State's Exhibit 20, which included photos of another young woman, depicting only the "young woman's legs and buttocks." Viewing all of the evidence, the court found that "these pictures were taken to memorialize [M.S.'] backside," and it determined that the evidence was sufficient to show that appellant's actions were exploitative. We agree.

Appellant argues that, unlike *Brackins* and *Walker*, there was no evidence that he "asked, coerced, or induced M.S. to pose for pictures for his own benefit or engaged in any sexually manipulative activity." Such activity, however, is not required to sustain a conviction for sexual abuse of a minor.

In *Schmitt*, 210 Md. App. at 501-02, this Court upheld the conviction of sexual abuse of a minor based on Schmitt's conduct of videotaping activities in the victim's bedroom, concluding that the evidence was sufficient to find that the defendant's actions "constituted exploitation of a sexual nature" even though the minor did not know about it until she subsequently "learned of it from the police and her mother." Schmitt's actions were sufficient to show that he "took advantage of or unjustly or improperly used [the victim] for his own sexual benefit," even if there was no showing that it had "an adverse sexual impact on the victim." *Id.*

The same can be said about appellant's actions. Based on the context of the actions, a teacher taking multiple photos of a student during school, and the content of the photos, which depicted primarily the buttocks of a student bending over what appears to be a table, as well as other photos depicting only a "young woman's legs and buttocks," a rational trier of fact could conclude that appellant's actions in taking these photos were for his own benefit and constituted exploitation of a sexual nature. The evidence was sufficient to support appellant's conviction of sexual abuse of a minor on Count III.

**Count I**

With respect to Count I, the conviction relating to N.S., appellant contends that "the uncorroborated testimony of N.S. was insufficient to find [him] guilty beyond a reasonable doubt of sexual abuse of a minor." He asserts that there was no evidence that he took a photo and "no evidence corroborating N.S.'s testimony or supporting any inference that he sexually abused or exploited N.S."

The State contends that "N.S.'s testimony was sufficient to prove that [appellant] sexually abused her by putting his iPhone under her skirt and taking a picture." It states that the circuit court "unequivocally credited N.S.'s testimony, and found as a fact that [appellant] 'snapped a photo or photos of [N.S.] while she was standing over him wearing a skirt.'"

N.S. testified that, on October 2, 2015, while she took the oral portion of her examination, appellant turned to face N.S. and "leaned forward like on his knees and he had his phone in his hand," which was facing downward with the screen toward the floor and the camera facing upward. Then, after leaning forward, appellant put the phone "almost underneath [N.S.'] skirt" and "started clicking the volume button[,] which takes pictures" when the phone is positioned in that manner.

Appellant contends that there was no evidence that he took a photograph of N.S., apart from "N.S.'s uncorroborated testimony." Appellant cites no cases supporting the

proposition that the testimony of a victim of a sexual offense needs to be corroborated. Indeed, the law is to the contrary. *See Branch v. State*, 305 Md. 177, 183 (1986) ("The testimony of a victim, unlike that of an accomplice, needs no corroboration.") (quoting *Walters v. State*, 242 Md. 235, 238 (1966)). Rather, it was for the trial court, as the trier of fact, to determine the credibility of N.S. and make inferences from the evidence. *Darling*, 232 Md. App. at 465.

In that regard, the court stated: "I find [N.S.'s] testimony to be absolutely credible," and it found as a fact that appellant "snapped a photo or photos of [N.S.] while she was standing over him wearing a skirt." This factual finding was not clearly erroneous.

Appellant contends that the court then made an assumption that the photo taken was "later deleted," an assumption that he asserts was in direct contravention of the evidence. We disagree.

With respect to the fact that no photo of N.S. was found on appellant's phone, the court stated:

> What happened to that photo, I don't know. I don't want to say I don't care because it would be certainly relevant to prove or disprove what had happened. But, you know, the wonders of modern technology being what they are, I don't find it the least bit unusual that either the camera did not take the photo for whatever reason, I don't know what happens when a flash doesn't go off, if a flash is, indeed, required in order to take a photo in that atmosphere. The camera may have malfunctioned. The image may have been erased. But, I have no doubt that a photo was taken.

Thus, the court did not assume that the photo had been deleted, noting several possible reasons why no photo of N.S. was recovered from appellant's phone.

-20-

Moreover, the record reflects possible reasons why no photo was found. Detective Giovacchini testified that, before she had the opportunity to look at the pictures on appellant's phone, appellant was manipulating the phone, "looking through items on his phone." Detective Onorio later testified that a thumbnail is not created on a phone until its user "touch[es] the photograph" in the camera roll to make it "appear [] full screen," so "if a user has manually deleted the photographs . . . but not actually looked at the photograph, it would not have created the thumbnail image."[7]

The court ultimately found that the lack of a photo, which could be explained for various reasons, did not negate a finding of exploitation. That determination was a correct statement of the law. *See Brackins*, 84 Md. App. at 162 ("Polaroid snapshot was not a necessary element of the exploitation although it was damning evidence of the act of exploitation.").

Appellant next contends that, even if a photo was taken, that does not establish exploitation. In support, he asserts that N.S. was not touched "or asked to position herself by [a]ppellant in any way." As we have explained, however, such actions are not required to sustain a conviction for sexual abuse of a minor.

---

[7] Detective Onorio's testimony did not indicate, as appellant seems to suggest, that, because there were messages sent to and from his phone during the relevant time, appellant did not take a picture of N.S. Detective Onorio testified that the information contained on appellant's phone, such as the phone's receipt of text messages and its cookies, did not enable him to determine what, if anything, appellant was doing on his phone during the relevant time "[b]ecause . . . there's no way to tell that."

Here, appellant's action, in placing his phone underneath his student's skirt and taking a picture, was sufficient for a rational trier of fact to find that appellant engaged in an act that involved sexual exploitation of N.S. at the time he had responsibility for her supervision. The evidence was sufficient to support appellant's conviction of sexual abuse of N.S.

**JUDGMENTS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**